*1202
 
 Opinion
 

 McINTYRE, J.
 

 We are presented with the issue of whether the public, through the news media, has a right to obtain copies of evidence introduced and played for the jury in a criminal trial. Absent a showing that providing such access threatens the integrity of the evidence, we conclude that the answer to this question is “yes”; accordingly, we grant the petition and issue the writ.
 

 Real parties in interest (the defendants) were arrested and charged in connection with the murder of an elderly gentleman for $5. Because of considerable community interest in the case, petitioners KNSD Channels 7/39 and KGTV Channel 10 (KNSD/KGTV) were present during the criminal proceedings. At trial, the prosecution offered into evidence an audiotape of a conversation that occurred between two of the defendants in the back of a police car after their arrest. The audiotape was introduced into evidence and played for the jury in open court, although the media apparently did not film this part of the proceedings.
 

 Thereafter, KNSD/KGTV filed a motion seeking access to the audiotape, pursuant to federal and constitutional law, as well as common law, so that they could copy the audiotape and air it for the public. The superior court denied the motion, finding in part that the public had had adequate access to the audiotape. It stated:
 

 “[O]n balance[,] the necessity to ensure a fair trial in this matter far exceeds the public right to access of material, and this is even more important given the fact that all of this material has already been made available to anyone who wanted to take the time to come down to the trial.
 

 “This trial has received a tremendous amount of pre-trial publicity and on-going publicity. This jury has been bombarded with the opportunity to violate its promise to me not to be exposed to these matters they should not consider. And I will do nothing further to fuel that possibility.”
 

 Discussion
 
 [1]
 

 The fundamental notion of public access to court proceedings is grounded in the common law of England and the United States.
 
 (Richmond Newspapers, Inc.
 
 v.
 
 Virginia
 
 (1980) 448 U.S. 555, 569 [100 S.Ct. 2814, 2823, 65
 
 *1203
 
 L.Ed.2d 973] [“at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open”].) Based on this history of openness, the public’s right of access to such court proceedings is now recognized as an integral part of the freedoms of speech and press guaranteed under the First Amendment to the United States Constitution.
 
 (Id.
 
 at pp. 575-581 [100 S.Ct. at pp. 2826-2829].) Similarly, the California Constitution, article I, section 2, subdivision (a), and section 15 provide for a right of access to judicial proceedings. (See also Pen. Code, § 686.)
 

 Records from judicial proceedings, including evidence introduced at such proceedings, are also subject to a public right of access. However, this right exists not by virtue of the First Amendment
 
 (Nixon
 
 v.
 
 Warner Communications, Inc.
 
 (1978) 435 U.S. 589, 608-610 [98 S.Ct. 1306, 1317-1318, 55 L.Ed.2d 570]; cf.
 
 Cox Broadcasting Corp.
 
 v.
 
 Cohn
 
 (1975) 420 U.S. 469, 495 [95 S.Ct. 1029, 1046, 43 L.Ed.2d 328]), but rather as a continuation of the common law right to inspect and copy judicial records. (See
 
 In re Nat. Broadcasting Co., Inc.
 
 (D.C. Cir. 1981) 653 F.2d 609, 612 [209 App.D.C. 354].) (1) The right of access “serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally.”
 
 (United States
 
 v.
 
 Hubbard
 
 (D.C. Cir. 1980) 650 F.2d 293, 315 [208 App.D.C. 399], fn. omitted.)
 

 The common law right of access to judicial records is not absolute, but “must be reconciled with legitimate countervailing public or private interests . . . .”
 
 (In re Nat. Broadcasting Co., Inc., supra,
 
 653 F.2d at p. 613.) However, the fundamental nature of the right gives rise to a “presumption” in favor of public access.
 
 (Richmond Newspapers, Inc.
 
 v.
 
 Virginia, supra,
 
 448 U.S. at p. 569 [100 S.Ct. at p.
 
 [2]
 

 California also recognizes the presumption of accessibility of judicial records in criminal cases and allows a trial court limited authority to
 
 *1204
 
 preclude such access. “[W]here there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed. In this regard the term ‘public policy’ means anything which tends to undermine that sense of security for individual rights, whether of personal liberty or private property, which any citizen ought to feel has a tendency to be injurious to the public or the public good.”
 
 (Craemer
 
 v.
 
 Superior Court
 
 (1968) 265 Cal.App.2d 216, 222 [71 Cal.Rptr. 193]; cf.
 
 Estate of Hearst
 
 (1977) 67 Cal.App.3d 777, 785 [136 Cal.Rptr. 821] [in a civil case, the trial court may preclude public access to judicial records “under exceptional circumstances and on a showing of good cause”].)
 

 As in this case, the most oft-invoked public policy in a criminal proceeding is the defendant’s due process right to a fair trial. (E.g.,
 
 Craemer
 
 v.
 
 Superior Court, supra,
 
 265 Cal.App.2d at pp. 222-223.) The United States Supreme Court has observed “. . . free speech and fair trials are two of the most cherished policies of our civilization, and it would be a trying task to choose between them.”
 
 (Bridges
 
 v.
 
 State of California
 
 (1941) 314 U.S. 252, 260 [62 S.Ct. 190, 192, 86 L.Ed. 192, 159 A.L.R. 1346].) However, in the circumstances presented, we find the balancing of conflicting fundamental rights not so difficult.
 

 The trial court justified its decision to deny access to the tape because it felt that excessive prejudicial publicity would impair the defendants’ fair trial rights, certainly a legitimate concern.
 
 (Craemer
 
 v.
 
 Superior Court, supra,
 
 265 Cal.App.2d at p. 223, citing
 
 Estes
 
 v.
 
 Texas
 
 (1965) 381 U.S. 532 [85 S.Ct. 1628, 14 L.Ed.2d 543].) However, where the evidence to which access is sought has already been presented to the jury, a defendant’s interest in precluding access to it is diminished, if not ameliorated altogether. (E.g.,
 
 United States
 
 v.
 
 Mitchell
 
 (D.C. Cir. 1976) 551 F.2d 1252, 1261 [179 App.D.C. 293] [“[i]t suffices to note that once an exhibit is publicly displayed, the interests in subsequently denying access to it necessarily will be diminished”], reversed on other grounds in
 
 Nixon
 
 v.
 
 Warner Communications, Inc., supra,
 
 435 U.S. at p. 603 [98 S.Ct. at p. 1315];
 
 Application of National Broadcasting Co., Inc., supra,
 
 635 F.2d at p. 952.)
 

 Further, once the evidence is presented in open court before the jury, the public’s interest in access to that evidence is particularly clear. (See
 
 Oklahoma Publishing Co.
 
 v.
 
 District Court
 
 (1977) 430 U.S. 308, 310 [97 S.Ct. 1045, 1046, 51 L.Ed.2d 355] [“. . . the First and Fourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public”], and cases cited therein.)
 

 In this context, a balancing of the parties’ conflicting interests surely requires that the evidence be accessible to the public. Accordingly, we hold
 
 *1205
 
 that, absent a showing that providing access would create a significant risk of impairment of the integrity of the evidence, the court must make evidence previously presented to a jury in open court reasonably available to the public. No showing of impairment risk was made here and thus the court erred in denying KNSD/KGTV access to the tape.
 

 Disposition
 

 Let a writ of mandate issue directing the superior court to vacate its order denying reasonable access to the audiotape for copying and broadcast and enter a new order permitting such access.
 

 Work, Acting P. J., and Nares, J., concurred.
 

 [1]
 

 The trial is now over. To the extent that the issue presented has been rendered moot, we nonetheless proceed to address it because of the importance of the question involved, the
 
 *1203
 
 possibility of its recurrence and the fact that trial court orders denying access to such evidence would otherwise evade review.
 
 (Globe Newspaper Co.
 
 v.
 
 Superior Court
 
 (1982) 457 U.S. 596 [102 S.Ct. 2613, 73 L.Ed.2d 248].)
 

 [2]
 

 Despite the universal agreement that a presumption of accessibility exists, the federal courts have described the level of discretion that a trial court has to deny such access in differing ways. (See
 
 United States
 
 v.
 
 Criden
 
 (3d Cir. 1981) 648 F.2d 814, 823 [“strong presumption” in favor of accessibility, such that the trial court must state articulable facts, rather than conjecture, to support denial of access];
 
 Application of National Broadcasting Co., Inc.
 
 (2d Cir. 1980) 635 F.2d 945, 952 [compelling circumstances required to overcome the presumption];
 
 In re Nat. Broadcasting Co., Inc., supra,
 
 653 F.2d at p. 613 [access may be denied only where the court concludes that “justice so requires”];
 
 Belo Broadcasting Corp.
 
 v.
 
 Clark
 
 (5th Cir. 1981) 654 F.2d 423, 430 [no strong presumption; trial court entitled to deference in determining whether to deny access];
 
 United States
 
 v.
 
 Webbe
 
 (8th Cir. 1986) 791 F.2d 103, 106 [same].)