119 Cal.Rptr.2d 588 (2002)
98 Cal.App.4th 145
David Alan WESTERFIELD, Petitioner,
v.
The SUPERIOR COURT of San Diego County, Respondent; Copley Press, Inc. et al. Real Parties in Interest.
No. D039640.
Court of Appeal, Fourth District, Division One.
May 3, 2002.
Review Denied June 26, 2002.[*]
*590 Law Offices of Steven E. Feldman, Steven E. Feldman, San Diego, Rebecca P. Jones, Boyce & Schaefer, Robert E. Boyce, San Diego, and Laura G. Schaefer, San Diego, for Petitioner.
No appearance for Respondent.
Harold W. Fuson, La Jolla, Scott A. Wahrenbrock, Judith L. Fanshan, Gray, Cary, Ware & Freidenrich and Guylyn R. Cummins, San Diego, for Real Party in Interest Copley Press, Inc.
Paul J. Pfingst, District Attorney, Gregory Thompson, Assistant District Attorney, Charles E. Nickel, Anthony Lovett, Jeff B. Dusek, Josephine A. Kiernan, and Richard S. Armstrong, Deputy District Attorneys for Real Party in Interest the People.
*589 McINTYRE, J.

FACTUAL AND PROCEDURAL BACKGROUND
On February 22, 2002, David Alan Westerfield was arrested in connection with the kidnapping of seven-year-old Danielle Van Dam. Four days later, the People filed a complaint charging Westerfield with murder with special circumstances in the death of Danielle, kidnapping and misdemeanor possession of child pornography. Before arresting Westerfield, police obtained seven search warrants
 a February 5 warrant (No. 27802) to search Westerfield's computer, computer files and disks for images of nudity and/or sexual activities involving juveniles and/or juveniles with adults;
 a February 6 warrant (No. 27809) to search records of Verizon Wireless for information regarding calls on Westerfield's mobile phone between February 1-4;
 a February 7 warrant (No. 27813) to search Twin Peaks Cleaners for all items Westerfield dropped off for cleaning;
 a February 15 warrant (No. 27818) to search Westerfield's home, 4-Runner, motor home and car carrier for carpet samples, biological samples, fibers, photos, children's pajamas, children's necklaces, Mickey Mouse earrings, unlaundered clothes, etc.;
 a February 13 warrant (No. 27830) to search Westerfield's home and seize footwear, tape-lift prints, binding materials, videotapes, CD's, recordings, recording equipment, film and pictures of nudity and/or sexual activity involving juveniles and/or juveniles with adults, and documents showing dominion and control;
 a February 19 warrant (No. 27845) to search records of Verizon Wireless for information regarding calls between February 15-19 made on a police mobile phone used while attempting to recreate Westerfield's travel route; and
 a February 19 warrant (No. 27846) to search PacBell records for information related to a trace on the Van Dams' phones between February 12-March 30.
*591 (The People indicate police also obtained an eighth warrant (No. 27800), which was not addressed by the court or the parties because of inadvertence.) At the request of police, the court sealed the warrants and all related documents including the affidavits supporting the warrants and the returns.
The Copley Press, Inc. (Copley) filed a motion for access to the sealed search warrant documents. At the February 27 hearing, the court modified its sealing order to make a copy of the documents available to defense counsel, allowed defense counsel 90 minutes to review the documents and held an in camera hearing with the prosecutor and defense counsel. Following the in camera hearing, the court ordered that the warrants be made available for the press, but deferred ruling on release of the affidavits supporting the warrants and related documents until March 4. The court also ordered counsel to file any requests for redaction by noon on March 1. On March 1, the People and Westerfield filed additional briefs under seal.
On March 4 the trial court issued an order granting Copley's motion to unseal the affidavits, returns, inventories and sealing orders pertaining to warrant Nos. 27802, 27809, 27813, 27818, 27830, 27845 and 27846, except for exhibits E and F to warrant No. 27830. As to these, the court found exhibits E and F to warrant No. 27830 labeled "sexually explicit material" contained information that was "harmful" under Penal Code sections 1417.8 and 313 and release was inappropriate. Further granting the request of the People and the defense to redact material that would be clearly inadmissible at trial, the court directed the prosecutor to make the indicated redactions and provide them to the court for review. The court also ordered the unredacted affidavits, the transcript of the February 27 in camera hearing, and the March 1 filings to remain under seal until the conclusion of Westerfield's criminal trial. Finally, the court issued a stay of its March 4 order until Westerfield could seek writ relief.
In a petition that appears to have been prepared before the issuance of the March 4 order, Westerfield complains the trial court provided him an insufficient opportunity to examine and lodge objections to more than 200 pages of material related to the warrants. We granted Westerfield's request to stay further release of the material, obtained all documents relating to the warrants under seal and requested responses to the petition from Copley and the People. We also permitted Westerfield and the People to submit any supplemental objections they might have to the release of the documents and to discuss potential mootness by virtue of testimony introduced at Westerfield's preliminary hearing conducted a few days later. We thereafter issued an order to show cause.

DISCUSSION
The issue in this case involves a clash between the public's right of access to judicial records and the real possibility that disclosure will jeopardize a criminal defendant's right to a fair trial.
The first step in our analysis is to determine the basis for the right of access and, accordingly, the standard to apply. Citing Press-Enterprise Co. v. Superior Court of Cal. (1984) 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 and various federal circuit cases, Copley argues the First Amendment guarantees the public a right of access to search warrant affidavits and related materials unless there is a compelling governmental interest requiring closure. In KNSD Channels 7/39 v. Superior Court (1998) 63 Cal.App.4th 1200, 74 Cal. Rptr.2d 595 we concluded the right of *592 access to records from judicial proceedings "exists not by virtue of the First Amendment ... but rather as a continuation of the common law right to inspect and copy judicial records." (Id. at p. 1203, 74 Cal. Rptr.2d 595.) We decline the invitation to extend the First Amendment standard to the records involved here. We note there is a split in the federal courts at least with respect to the issue of pre-indictment warrant materials. (Compare Times Mirror Co. v. U.S. (9th Cir.1989) 873 F.2d 1210 [no First Amendment right of access], Baltimore Sun Co. v. Goetz (4th Cir.1989) 886 F.2d 60 [no First Amendment right of access] and In re Search Warrant for Secretarial Area-Gunn (8th Cir.1988) 855 F.2d 569 [qualified First Amendment right of access].)
The United States Supreme Court applies a two-tiered inquiry to claims of First Amendment right of access in criminal proceedings. (Press-Enterprise Co. v. Superior Court (1986) 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1.) As the court explains:
"First, because a `"tradition of accessibility implies the favorable judgment of experience"' [citations], we have considered whether the place and process have historically been open to the press and general public, [¶] ... [¶] Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question. [Citation]." (Ibid.)

Even when a First Amendment right attaches, the right is not absolute, adds the court cautioning "[w]hile open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity." (Id. at p. 9, 106 S.Ct. 2735.)
Traditionally, warrant proceedings and materials have been closed to the public. "[T]he history of the warrant process in this country indicates that the issuance of search warrants has traditionally been carried out in secret. Normally a search warrant is issued after an ex parte application by the government and an in camera consideration by a judge or magistrate." (Times Mirror Co. v. U.S., supra, 873 F.2d 1210, 1213-1214.) In the same vein, "[t]he process of disclosing information to a neutral magistrate to obtain a search warrant ... has always been considered an extension of the criminal investigation itself. It follows that the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded other aspects of the criminal investigation." (Id. at p. 1214.)
Copley rebuts the confidentiality of the information supporting the warrants, pointing out that documents and records relating to a warrant become public 10 days after the warrant is executed pursuant to Penal Code section 1534 and the new California Rules of Court impose significant barriers to sealing (Cal. Rules of Court, rules 243.1 & 243.3). These arguments put the cart before the horse: neither the statute nor the new rules create a historical basis for open access to warrant materials or establish that the First Amendment requires such materials to be unsealed. We add, although Penal Code section 1534 provides documents relating to a search warrant become public 10 days after execution of the warrant, the statute has been interpreted to exclude material that is deemed privileged or confidential. (People v. Hobbs (1994) 7 Cal.4th 948, 971, 30 Cal.Rptr.2d 651, 873 P.2d 1246.) There is also a serious question about applying the new rules on sealing to the search warrant documents. Warrant-related documents *593 are submitted for in camera consideration by a judge or magistrate upon ex parte application by law enforcement officers: they are not discovery materials, materials used at trial or materials submitted to the court as a basis for adjudication. (Advisory Com. Com., Cal. Rules of Court, rule 243.1, citing NBC Subsidiary (KNBC-TV), Inc. v. Superior Court (1999) 20 Cal.4th 1178, 1208-1209, fn. 25, 86 Cal. Rptr.2d 778, 980 P.2d 337.)
There are also serious questions whether public access would "play[ ] a significant positive role in the functioning" of the process. (Press-Enterprise Co. v. Superior Court, supra, 478 U.S. at p. 8, 106 S.Ct. 2735.) For one thing, public access could frustrate the warrant process by creating an opportunity for the subject of the warrant to discover the status and direction of the criminal investigation and destroy evidence. In addition, affidavits supporting the warrant are typically based on (a) hearsay that is often inadmissible at trial, (b) bare-bone details sufficient only for a finding of probable cause and (c) facts proffered in good faith that may later turn out to be inaccurate. Public access to inadmissible hearsay, incomplete information and/or inaccurate facts plays no significant role in advancing an understanding of the functioning of the warrant process or activities of the government. Finally, other mechanismssuppression motions and the likeexist to further public awareness of the process and curb governmental abuse. Under these circumstances, we conclude the public has no First Amendment right of access to search warrant-related documents.
Notwithstanding the First Amendment, California law recognizes a presumption of accessibility to judicial records in criminal cases but also authorizes trial courts to withhold access. (KNSD Channels 7/39 v. Superior Court, supra, 63 Cal.App.4th at p. 1203, 74 Cal.Rptr.2d 595.) "[W]here there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed. In this regard the term `public policy' means anything which tends to undermine that sense of security for individual rights, whether of personal liberty or private property, which any citizen ought to feel has a tendency to be injurious to the public or the public good." (Craemer v. Superior Court (1968) 265 Cal. App.2d 216, 222, 71 Cal.Rptr. 193.) The defendant's constitutional right to a fair trial is most often the cry we hear when it comes to countervailing public policy. (KNSD Channels 7/39 v. Superior Court, supra, 63 Cal.App.4th at p. 1204, 74 Cal. Rptr.2d 595, citing Craemer v. Superior Court, supra, 265 Cal.App.2d at pp. 222-223, 71 Cal.Rptr. 193.)
The defendant's right to a fair trial outweighs any statutory or common law right of pretrial access to public records. (Craemer v. Superior Court, supra, 265 Cal.App.2d at pp. 226-227, 71 Cal. Rptr. 193.) "[T]he public generally has no right to pretrial disclosure of questionable evidence, a disclosure which might well deny to the accused the fair and impartial trial which is his due." (Allegrezza v. Superior Court (1975) 47 Cal.App.3d 948, 951, 121 Cal.Rptr. 245, citing Craemer v. Superior Court, supra, 265 Cal.App.2d 216, 71 Cal.Rptr. 193.) In fulfilling its duty to ensure a fair trial, the court has the authority to preclude access to evidence or exhibits until the parties can litigate the admissibility of any prejudicial information. (Allegrezza v. Superior Court, supra, 47 Cal.App.3d 948, 121 Cal.Rptr. 245 [minor's confession]; Oziel v. Superior Court (1990) 223 Cal.App.3d 1284, 1302, 273 Cal.Rptr. 196 [videotaped search of psychiatrist's office].) The question for the court in deciding whether to preclude *594 access is whether pretrial disclosure will result in a probability of prejudice to the defendant. (Craemer v. Superior Court, supra, 265 Cal.App.2d at pp. 225-226, 71 Cal.Rptr. 193.)
We have thoroughly reviewed the materials under seal, considered the arguments of counsel and conclude the probability of unfairness requires somewhat broader sealing than that ordered by the trial court. Most of the material, however, should be made public now. Our sealing does not extend to testimony or exhibits admitted in open court at the preliminary examination. (See KNSD Channels 7/39 v. Superior Court, supra, 63 Cal.App.4th at p. 1204, 74 Cal.Rptr.2d 595; Oklahoma Publishing Co. v. District Court (1977) 430 U.S. 308, 310, 97 S.Ct. 1045, 51 L.Ed.2d 355 ["the First and Fourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public"]; In re Application of National Broadcasting Co., Inc. (2nd Cir.1980) 635 F.2d 945, 952.) However, while, as the People concede, much of the information contained in the warrant documents was admitted at the preliminary examination, the trial court did not admit all the information and further sealed exhibits E and F to warrant No. 27830 after admitting them.
Under these circumstances, we order that the material from the affidavits referenced on the attached page remain under seal until the conclusion of the trial in this case. With respect to the referenced material, we conclude the overriding interest in the defendant's right to a fair trial overcomes the right of public access and supports sealing; there is a substantial probability the overriding interest will be prejudiced if the record is not sealed; the sealing is narrowly tailored; and no less restrictive means exist to achieve the overriding interest.
Let a writ issue directing the superior court to vacate its March 4 order and enter an order consistent with this opinion. The clerk of this court is ordered to return the documents transmitted under seal by superior court. Although Westerfield failed to file a formal application for sealing, his supplemental brief filed on March 21 was labeled "sealed and confidential." It contains extensive passages from the warrant materials submitted to us under seal and as such it will remain sealed. This opinion is made final immediately as to this court. (Cal. Rules of Court, rule 24(d).)
I CONCUR: McDONALD, J.

ATTACHMENT 1
The following material shall remain under seal until the conclusion of the trial in this matter: a. Affidavit to warrant No. 27818
1. Page 7, line 19, through page 8, line 13
2. Page 12, line 18, through page 13, line 10
3. Page 15, line 11 through end of page 16
b. Affidavit to warrant No. 27809
1. Page 2, lines 23 through 25
2. Attachment "A" to warrant No. 27809, page 7, line 19, through page 8, line 13
3. Attachment "A" to warrant No. 27809, page 12, line 18, through page 13, line 10
4. Attachment "A" to warrant No. 27809, page 15, line 11, through the end of page 16.

*595 c. Affidavit to warrant No. 27802
1. Attachment "1" to warrant No. 27802, the last 5 lines of page 2 starting with "On 02-04-02" through the end of the first paragraph on page 3 ending with the word "suspect."
2. Attachment "1" to warrant No. 27802, last full paragraph on page 3 starting with "Van Dam stated" and ending with "Westerfield."
3. Attachment "l"to warrant No. 27802first full paragraph on page 5 starting with "On 02/04/02" and ending with the word "evaluation."
d. Affidavit to warrant No. 27830
1. Page 6, line 10, starting with the words "I have spoken" through page 9, line 14, ending with "male."
2. Page 10, line 3, starting with "I believe" through line 9, ending with the word "identity."
3. Attachment "A" to warrant No. 27830, page 7, line 19, through page 8, line 13
4. Attachment "A" to warrant No. 27830, page 12, line 18, through page 13, line 10
5. Attachment "A" to warrant No. 27830, page 15, line 11, through the end of page 16.
6. Exhibits D, E and F in their entirety
e. Affidavit to warrant No. 27845
1. Page 2, line 15, starting with "On February 4, 2002" through line 17, ending with the word "failed."
HUFFMAN, Acting P.J., Concurring and Dissenting:
I concur with the majority opinion insofar as it determines there is no First Amendment right of the media to pretrial access to the search warrant affidavits in this case. The majority correctly relies on KNSD Channels 7/39 v. Superior Court (1998) 63 Cal.App.4th 1200, 1203-1204, 74 Cal.Rptr.2d 595, for the proposition that ordinarily free inspection of public records should be allowed. It is also clear that a defendant's right to a fair trial is a legitimate countervailing policy consideration, which can warrant delay in allowing public inspection of certain court records. (Craemer v. Superior Court (1968) 265 Cal. App.2d 216, 222, 71 Cal.Rptr. 193.)
I also agree with the majority's conclusion that Penal Code section 1534, subdivision (a), does not require unsealing of search warrant affidavits where there is a legitimate risk of impairment of a person's right to trial by an impartial jury. (People v. Hobbs (1994) 7 Cal.4th 948, 971, 30 Cal.Rptr.2d 651, 873 P.2d 1246.)
Finally, I concur with the majority opinion and its appendix insofar as it redacts portions of the search warrant affidavits at issue in this case. In short, we are largely in agreement on the law as it applies to this case. I part company with my colleagues, however, in the application of the law to the facts before us. I believe the only fair balance of the competing interests in this case is to seal all of the search warrant affidavits until completion of the trial court proceedings.
The issue before us is not whether the affidavits will be disclosed, for no one objects to disclosure after the trial is over. Nor, in my view is the issue the "public's right to know." This case has been well publicized. In the exercise of his discretion the magistrate allowed live electronic coverage of the preliminary hearing. The pretrial motions will be open to the public and the trial court retains the discretion to allow electronic coverage of the trial. (Cal. Rules of Court, rule 980.) The "public's right to know" will be fully vindicated *596 in this case. The question, which remains open, is whether the defendant's right to a fair trial before an impartial jury will also be preserved.
The issue, in my view, is one of timing of disclosure and whether the public interest weighs in favor of pretrial disclosure of any of this material. I see the question as one of the newsworthiness of the material, driven by the desire to publish such material pretrial when it would be of no interest to the media after trial. While I recognize the very legitimate right of the media to make editorial decisions as to what is or is not "worthy" of publication, I do not see newsworthiness as an interest of such significance as to outweigh the interest of this capital defendant in minimizing the amount of prejudicial pretrial publicity.
The record before this court and the discussions at oral argument well demonstrate this case has been the subject of massive media attention. At the outset of the tragic events surrounding the disappearance of the young victim in this case, the media exhaustively covered the case and its developments. There were several weeks of hordes of media representatives camped outside the residences of the victim and the then suspect, who has become the defendant. The public was informed of the suspect's status, his travels to and from his attorney's office and his arrest. Various stages of the case have involved press conferences as well as commentators offering views and speculation on the defense case and strategies. As previously mentioned, the preliminary hearing was presented live on television.
The majority has done a commendable job in redacting materials from the affidavits. It has properly recognized that the materials in such affidavits are presented ex parte and have not yet been the subject of adversarial review. The majority also recognizes search warrant affidavits often contain hearsay, opinion and other materials, which may not be admissible in a trial. As the United States Supreme Court has often recognized, the purpose of requiring a showing of probable cause in a search warrant affidavit is to test the reasonableness of the police officer's suspicion and to determine whether to allow an intrusion into privacy based upon such reasonable suspicion. The probable cause determination does not attempt to determine guilt, it only looks to reasonableness of suspicion. As such, the court has permitted the use of hearsay evidence and accepts the proposition the suspicion might, at the end of the day, be proved unfounded. (See Illinois v. Gates (1983) 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527; Illinois v. Rodriguez (1990) 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148; Draper v. U.S. (1959) 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.)
The majority appears to be influenced in its decision to redact as opposed to temporarily seal the affidavits on the basis that much of the information contained in the affidavits was disclosed in testimony at the preliminary hearing. While it is clear from the representations of counsel to the court (since we do not have the record of the preliminary examination before us) that some of the subject matter in the affidavits may have been covered in testimony or exhibits, it is clear the validity of the search warrants themselves has not yet been litigated. Nor have other evidentiary challenges pending in the trial court been resolved. I do not agree with the view that since some of the subject matter may have been covered at an evidentiary hearing, we should release redacted affidavits.
First, to the extent subject matter has been covered, the public has already been informed. The search warrant affidavits will simply provide information, in a different form, and perhaps add otherwise inadmissible opinion or speculation. Some of the material to be released may still be the *597 subject of evidentiary challenge. In other words, the release of the redacted materials does not advance the public's "right to know" in any meaningful fashion.
The release as ordered by the majority will have one very immediate effect. It will create a news event, an opportunity for "commentators" to speculate and to add to the volume of otherwise inadmissible material presented to potential jurors in this case. The defendant is pending trial for a death penalty, or life without parole, offense. He is entitled by the fundamental rules, which govern this society, to have a trial in this community before an impartial jury, which fairly resolves the issues of guilt and possible penalty based on evidence that has met the test of reliability in a court of law. Even the cautious efforts of the majority to steer a middle course will be detrimental to the objective of a reliable determination of guiltor innocence at trial. Accordingly, I respectfully dissent to that portion of the opinion which releases any portion of the search warrant affidavits now before us.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published.

(See California Rules of CourtRules 976 and 977).