Filed 7/22/16

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JIM DALE DAVIS, | |
| Petitioner, | E063943 |
| v. | (Super.Ct.No. IRC22535) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Dale R. Wells, Judge. Petition granted.

Jim Dale Davis, in pro. per., and Edward J. Haggerty, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

1

Michael A. Hestrin, District Attorney, Emily R. Hanks, Deputy District Attorney, for Real Party in Interest.

In this matter we have reviewed the petition, the informal response by real party in interest, a letter filed by real party in interest on November 3, 2015, and a subsequent letter from petitioner. Having determined that petitioner may have established a right to relief, we set an order to show cause. For the reasons we set forth *post*, we conclude a writ must issue to require the trial court to at least partially grant petitioner's request for postconviction discovery. (Pen. Code,[1] § 1054.9.)

### FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted petitioner of three counts of first degree murder with enhancements. (*People v. Brown* (Oct. 6, 1998, E018586) [nonpub. opn.].) The trial court sentenced petitioner to multiple terms of life without the possibility of parole.

Toward the end of 2011, petitioner notified the trial court that he sought postconviction discovery under section 1054.9. On January 26, 2012, the trial court held a hearing on petitioner's request. It ordered petitioner and real party in interest to informally resolve the issues of what discovery materials petitioner would receive but informed petitioner he would need to pay for copies before anything would be released. The parties subsequently exchanged several letters on this topic.

On March 4, 2015, petitioner once again wrote the trial court about receiving postconviction discovery. He indicated that, in correspondence with real party in interest,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

he had narrowed the list of items he wanted to six items, including police reports, the "Murder book," all suspects questioned, all fingerprints collected, all DNA collected, and all witness statements. He also argued he could not be forced to pay for copies of discovery because he was indigent and could not be treated differently from wealthier defendants.

Real party in interest filed a written opposition to petitioner's March 4, 2015 request. It contended petitioner's discovery requests were vague and/or overbroad and asserted petitioner could not evade paying for copies of postconviction discovery.

On April 22, 2015, the court issued a minute order regarding petitioner's March 4, 2015 request under section 1054.9. It flatly denied the request for postconviction discovery without explanation.

The instant petition followed. After we set an order to show cause, real party in interest opted to stand on its informal response instead of filing a return. Real party in interest did, however, file a letter on November 3, 2015, indicating that Paula Mitchell, an attorney from the Innocence Project at Loyola Law School in Los Angeles (Innocence Project), had contacted its office and offered to pay the costs of producing the discovery petitioner requested. A declaration attached to that letter attests than Alan D. Tate, an attorney in the office of real party in interest, mailed a disk containing "electronic copies of the documentary and photographic discovery" contained in the file from the prosecution of petitioner to Mitchell. Tate also indicated he offered to make copies of

audio and video recordings available at a cost. The November 3, 2015 letter suggests this matter is now moot.

Petitioner, acting in propria persona as he had when he filed the petition, filed a letter[2] in which he asserted that the Innocence Project represented him in a different matter, but not in this one. In this document, petitioner objected that Tate had stated in earlier correspondence that there were 19 boxes of discoverable evidence, but that he told Mitchell that he only had approximately one box of materials to produce. Petitioner acknowledged that Mitchell had received a "disk and audio and video recordings from Santa Clara Innocence Project"[3] but complained that neither one of them had possession of "the sheriff department investigation files" (which he called the "murder book"), investigative reports from the Indio and Palm Desert Police Departments, or "the grand jury reports."

Having determined there may be merit to petitioner's contentions, we set an order to show cause. We also appointed counsel for petitioner.

## DISCUSSION

In his petition for writ of mandate, petitioner argues "the question . . . is whether an[ indigent] inmate is afforded the same rights as a wealthy inmate who can afford to pay for his discovery." A writ must issue for reasons we explain *post*.

---

[2] We deemed the letter a traverse due to the timing of our receipt of the document.

[3] According to the Tate declaration appended to real party in interest's November 3, 2015 letter, this entity represents one of petitioner's codefendants.

4

*1. This matter is not moot*

At the outset, we dispel the notion that this matter is moot because real party in interest has provided all relevant materials to petitioner by mailing a disk to Mitchell. The traverse disputes that real party in interest has produced all of the discovery items petitioner requested. The trial court has not been asked to make findings in this regard, and we will not do so in the first instance. As we discuss *post*, we remand this matter to the trial court for attempts at informal resolution of the dispute the petition presents or, should those fail, further orders in keeping with this opinion. The extent to which real party in interest may have already complied with its obligations under section 1054.9 is one of the issues the trial court is to consider when undertaking these tasks.

*2. Petitioner's entitlement to postconviction discovery*

Section 1054.9 allows inmates facing sentences of life or life without the possibility of parole who are prosecuting a writ of habeas corpus or a motion to vacate the judgment to demand the production of postconviction discovery. (§ 1054.9, subd. (a).) If such an inmate makes "a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful," the trial court "shall" order that "discovery materials" be made available to the inmate. (§ 1054.9, subd. (a).) In essence, "If [a] showing [that defendant sought discovery from his or her trial counsel, but unsuccessfully] is made, the defendant is entitled to discovery." (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 305, quoting § 1054.9, subd. (a).)

In the context of a section 1054.9 request, " 'discovery materials' means materials

5

in the possession of the prosecution and law enforcement authorities to which the . . . defendant would have been entitled at time of trial." (Pen. Code, § 1054.9, subd. (b).) More specifically, an inmate who can show unsuccessful efforts to obtain items from trial counsel is entitled to receive discovery materials that "either (1) the prosecution did provide at time of trial but have since become lost to the defendant; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (*In re Steele* (2004) 32 Cal.4th 682, 697.)

In most instances, an inmate requesting postconviction discovery under section 1054.9 need only demonstrate a reasonable belief that the items he or she requests actually exist; he or she need not also prove the items' materiality before being able to receive the discovery. (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 899-900 (*Barnett*).) However, an inmate seeking access to physical evidence must show "that there is good cause to believe that access to physical evidence is reasonably necessary to the defendant's effort to obtain relief." (§ 1054.9, subd. (c).) Similarly, an inmate must

use the procedures described by section 1405, not section 1054.9, to obtain postconviction DNA testing.  (§ 1054.9, subd. (c).)

In this case, and as we described *ante*, petitioner requested six categories of discovery he was seeking.[4]  Subdivision (c) of section 1054.9 bars petitioner from obtaining new DNA testing without complying with section 1405.  Since petitioner has made no attempt to show that he meets these standards, which include a requirement that he "explain how the DNA testing is relevant to his . . . assertion of innocence" (§ 1405, subd. (b)), we agree with the informal response that this evidence is unavailable to petitioner in response to his March 4, 2015 request under section 1054.9.  In addition, petitioner is only entitled to access physical evidence regarding fingerprints if he shows good cause to think that it "is reasonably necessary to [his] effort to obtain relief."[5] (§ 1054.9, subd. (c).)  We again agree with real party in interest that petitioner has attempted no such showing.

---

[4]  The traverse appears to add a new category, namely, "the grand jury reports." As we see no indication that the trial court was ever asked to assess the discoverability of such documents, and because real party in interest has not had a chance to respond to the suggestion that they are discoverable, we will not now analyze whether grand jury reports, should they in fact exist, are subject to production by real party in interest pursuant to section 1054.9.  Instead, we trust the trial court will exercise discretion in deciding whether petitioner has made a proper request for items related to a grand jury and, if so, whether any such items are discoverable.

[5]  On the other hand, we see no reason why petitioner would not be entitled to documents or other discovery *regarding* fingerprint evidence, as long as obtaining such discovery does not involve obtaining access to "physical evidence" within the meaning of section 1054.9, subdivision (c).

7

In contrast, petitioner's requests for police reports[6], the "Murder book," information about suspects questioned, and all witness statements are specific, and they are sufficiently tailored to the facts of the case that petitioner has met his threshold burden of demonstrating a reasonable belief that the documents exist. We conclude petitioner is entitled to at least some of these items.

Still, we do not now attempt to tell the trial court exactly what order it should make regarding the discovery items to which petitioner is entitled. This is because we cannot tell from the minute order denying the motion whether the trial court denied the motion after deciding that none of petitioner's categories of discovery was appropriate, or whether it issued a flat denial because petitioner failed to pay for copies. If the trial court did not exercise any discretion in determining what specific items of postconviction discovery petitioner is eligible to receive, we may not and will not, at this juncture, specify what order it must make. Instead, we remand this matter to the trial court so it can exercise discretion regarding which specific items of discovery, excluding new DNA testing and physical evidence such as fingerprints, petitioner is entitled to receive.

3.   *Payment of costs associated with production of postconviction discovery*

Subdivision (d) of section 1054.9 reads: "The actual costs of examination or copying pursuant to this section shall be borne or reimbursed by the defendant." Petitioner asserts he cannot be forced to pay for copies of discovery in advance because

---

**6** The requests for reports from particular police departments that were contained in the traverse falls under this category of items petitioner requested from the trial court.

8

he is indigent and asserts he has been denied the postconviction discovery rights possessed by inmates who are not indigent. After framing the issue slightly differently, we agree with petitioner in part.

As a threshold matter, real party in interest contends petitioner failed to prove his alleged indigence. (Cf. *Schaffer v. Superior Court* (2010) 185 Cal.App.4th 1235, 1245 (*Schaffer*) [writ petition arguing unconstitutionality of requiring criminal defendants to pay costs of copying pretrial discovery denied because the petitioner "did not contend or demonstrate that he was indigent or otherwise entitled to have the county pay for the costs associated with his defense"].) We do not agree that the petitioner in this case failed to demonstrate his inability to pay discovery costs. At the January 26, 2012 hearing, the trial court informed petitioner that he would need to pay for copies of any discovery he planned to receive. The issue of payment surfaced throughout the parties' informal communications. For these reasons, real party in interest was on notice that petitioner claimed indigence. In fact, at the hearing on January 26, 2012, an attorney in the office of real party in interest told petitioner he would provide copies of a limited number of items for free after petitioner stated he could not pay. The trial court is free to further examine whether petitioner has any assets that could be used to pay for discovery, but we will not deny the writ petition on this ground, alone.

Petitioner asserts that forcing him to pay for copies of postconviction discovery violates his right to equal protection under the law because it places him on different footing from wealthier inmates who can afford to pay for the discovery they request.

9

Real party in interest counters that the Legislature reasonably shifted the cost of postconviction discovery to the inmates seeking it in order to curb abuse of section 1054.9. As the record in this court contains no statistics or other evidence regarding the possible cost to the state should we hold that real party in interest must provide all section 1054.9 discovery at no cost to inmates like petitioner, we would have difficulty engaging in a thorough equal protection analysis were we forced to do so. (Cf. *M.L.B. v. S.L.J.* (1996) 519 U.S. 102, 122 [analyzing data regarding the number of a particular type of appeal filed in the state of Mississippi and concluding no undue burden would result].) In addition, we once again cannot tell from the minute order denying the motion without explanation whether the trial court reasoned that petitioner could not be entitled to any postconviction discovery without paying for it or whether it instead concluded that petitioner was not entitled to any of the material he requested.

In this case, we need not reach the constitutional issue petitioner raises because we are mindful that "a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity." (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 147, fn. omitted, overruled on other grounds by *People v. Anderson* (1987) 43 Cal.3d 1104.) As we now explain, interpretation of section 1054.9 leads us to our holding without consideration of constitutional principles.

Quite simply, section 1054.9 does not require an inmate seeking postconviction discovery to pay in advance for copies of discovery. Instead, it requires such an inmate

to either bear or "reimburse[]" those costs.  (§ 1054.9, subd. (d).)  "Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage."  (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22.)  If we required any costs of discovery under section 1054.9 to be "borne" in the sense of paid in advance, we would eliminate the words "or reimbursed" from the statute.  (§ 1054.9, subd. (d).)

Still, we do not and will not instruct the trial court as to exactly how to address the payment of costs by petitioner, as there are many ways in which an inmate may receive postconviction discovery without paying the copying costs in advance.  For example, the parties might agree that petitioner can pay costs over time using his prison wages or other funds to which he has access.  (See *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376-1377 [trial courts may use prison wages to determine an inmate's ability to pay a restitution fine].)  Such an arrangement would be not unlike the system by which trial courts recoup filing fees over time by having them deducted from an inmate's account at a prison.  (Gov. Code, § 68635.)  The parties might also agree that real party in interest will make discovery available to petitioner's counsel to view without taking or paying for any copies.  (See *Schaffer*, *supra*,185 Cal.App.4th at p. 1245 ["In the event a defendant or his counsel chooses not to pay reasonable duplication fees, the district attorney must make reasonable accommodations for the defense to view the discoverable items in a manner that will protect attorney-client privileges and work product."].)  We stress that these two suggestions are in no manner an exhaustive list of ways in which the parties might be able to ensure that petitioner receives the discovery to which he is entitled.

11

Rather, "We assume the parties and their counsel will conduct themselves according to the high standards the legal profession demands. Should any dispute arise over the accommodations, we are confident the trial court will know how to resolve it." (*Ibid.*) Today, we hold only that real party in interest may not completely prohibit petitioner from receiving postconviction discovery without first paying for copies of what he receives.

### 4. *Our plea to the Legislature*

We close by suggesting that at least some of the issues the trial court faced in ruling on the motion that is the subject of this writ petition could have been avoided, or at least ameliorated, if section 1054.9 allowed for the appointment of counsel for purposes of presenting a request for postconviction discovery to the trial court. We note any "indigent convicted person may request appointment of counsel in order to prepare a motion" for postconviction DNA testing. (§ 1405, subd. (b).) In contrast, section 1054.9 offers no such relief.

As indicated in the factual summary we provided above, petitioner, multiple attorneys involved in this case, and two courts have now spent a good amount of time attempting to decipher who may or may not have turned over what to whom, what might still need to be produced, and how production should occur. At oral argument in this court, however, counsel for both petitioner and real party in interest agreed that the parties were able to agree upon a way to produce all relevant discovery at very low cost after we appointed counsel for petitioner. Section 1054.9 appears to attempt to strike a

12

balance between ensuring the availability of discovery materials to those inmates serving very long sentences while still conserving judicial and financial resources by requiring a good faith attempt to obtain the discovery materials from trial counsel before seeking judicial intervention (§ 1054.9, subd. (a)) and placing the burden of payment or reimbursement for discovery costs on the defendant (§ 1054.9, subd. (d)). We suggest this balance would be struck better, and with significantly more convenience to courts and parties alike, if the Legislature provided for the right to counsel in preparation for filing a motion for postconviction discovery under section 1054.9.

## DISPOSITION

"We believe the instant discovery dispute[, including the issue of petitioner's reimbursement of the costs of discovery,] is best resolved by remanding the matter back to the trial court, where the parties can try to settle it informally consistent with the views expressed in this opinion. If informal efforts fail, the trial court can issue a new order consistent with this opinion." (*Barnett*, *supra*, 50 Cal.4th at p. 906.)

Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate the order denying petitioner's request for postconviction discovery under section 1054.9. Absent an agreement between the parties, the superior court is to consider petitioner's discovery requests in keeping with this opinion and order disclosure of those materials to which petitioner has demonstrated entitlement. Should the parties fail to agree on a reimbursement plan for any copying costs that are or will be incurred,

the trial court is authorized to make an order on that issue that is consistent with this opinion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.