# IN THE SUPREME COURT OF CALIFORNIA

WILLIAM TUPUA SATELE,

Petitioner,

v.

THE SUPERIOR COURT OF LOS ANGELES COUNTY,

Respondent;

THE PEOPLE,

Real Party in Interest.

S248492

Second Appellate District, Division Three
B288828

Los Angeles County Superior Court
NA039358

July 18, 2019

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

SATELE v. SUPERIOR COURT

S248492


Opinion of the Court by Corrigan, J.


Petitioner, William Tupua Satele, asked the superior court to release ballistics evidence for expert testing in preparation for filing a habeas corpus petition. The court denied the request under the authority of Penal Code section 1054.9, which governs discovery in habeas corpus proceedings involving certain judgments, including a sentence of death. Specifically, the court found that Satele had failed to show good cause to believe his access to the evidence was reasonably necessary to obtain relief, as the statute requires. The trial court erred. Section 1054.9's good cause requirement applies only to physical evidence in possession of the prosecution and law enforcement authorities, not to evidence held by the court. Court documents, including exhibits, are generally open to public inspection and may be released subject to such conditions the court deems necessary to safeguard their integrity. A threshold showing of good cause is not required. We issue a writ of mandate directing the trial court to vacate its order and conduct further proceedings consistent with this opinion.

## I. BACKGROUND

Satele was sentenced to death for the first degree murders of Renesha Ann Fuller and Edward Robinson, with a special

circumstance finding for multiple murders. (Pen. Code,[1] §§ 187, subd. (a), 189, subd. (a), 190.2, subd. (a)(3); *People v. Nunez and Satele* (2013) 57 Cal.4th 1 (*Nunez and Satele*).) Briefly, the facts are these: Satele and codefendant Daniel Nunez shot the victims from a car while they stood in front of Robinson's home. Robinson was shot three or four times; Fuller was shot twice. (*Nunez and Satele*, at pp. 5–6.) About an hour later Satele was heard to say, " 'We were out looking for niggers,' " and either he or Nunez said, " 'I think we hit one of 'em.' " (*Id.* at p. 6.) The prosecution introduced evidence that Nunez and Satele were members of the West Side Wilmas gang and that murdering a Black couple with no gang ties, like the victims in this case, would enhance their gang status. (*Id.* at pp. 6, 9.) Also connecting Satele to the crime was a semiautomatic gun recovered from a car he was driving hours after the shooting. A ballistics comparison identified it as the murder weapon. (*Id.* at pp. 6–7.)

Satele's death judgment was affirmed on direct appeal. (*Nunez and Satele, supra*, 57 Cal.4th at p. 63.) In January 2017, Satele's habeas counsel informally asked the prosecutor for discovery under section 1054.9. As relevant here, counsel requested "[a]ll materials concerning the testing and examination of ballistics evidence, including, but not limited to reports, bench notes and photographs." In October 2017, Satele sought an order requiring the prosecutor to produce the evidence for testing by an expert, again citing section 1054.9.

At the hearing on the motion, habeas counsel explained that he had been unable to obtain ballistics bench notes or

---

[1]     All further undesignated statutory references are to the Penal Code.

photographs from the prosecutor.  Counsel asked the court to release various items, including bullets, shell casings, and the weapon, for expert testing.  The items were trial exhibits held by the court clerk.

The trial court found Satele had failed to meet the good cause requirement of section 1054.9.  It observed that two prosecution experts and one defense expert had all agreed that the ballistics evidence matched the weapon seized from Satele's car.  According to the court, "sometimes that is just what it is. It is just painfully obvious that they're a match, and it sort of sounds like that's what we have here.  Unless we're paying for yet another person to come in to look at the bullets or look at the evidence and say, 'It's a match.' "  In the court's view, the statute's good cause requirement was meant to preclude such fishing expeditions, which could go on "ad infinitum."

Habeas counsel interjected that there may be some "confusion here."  He clarified that, despite his reliance on section 1054.9 in his moving papers, "it's not really a [section] 1054.9" motion, because the court, not the prosecutor, held the evidence.  He explained, "It's just evidence of the court" and "[w]e just want our expert to be able to look at it" with all necessary precautions to preserve the chain of custody.  The court denied Satele access to the physical evidence under any circumstances.  The court explained:  "It finally sort of dawned on me why I'm struggling, and it is because of the phrase 'good cause.'  I'm not seeing that there is good cause.  Good cause to believe that the access to the physical evidence is reasonably necessary for the defendant to get relief."

The Court of Appeal summarily denied Satele's petition for writ of mandate.  We denied his petition for review, which

framed the issue in terms of whether physical evidence must be released for a defense expert's examination when scientific or technological developments have undermined a prosecution's expert's opinion. Instead, we granted review on our own motion and directed the People to show cause why the relief requested should not be granted "on the ground that the superior court abused its discretion by applying Penal Code section 1054.9 [former] subdivision (c) [now subdivision (d)] to a motion for access to trial evidence that is in the possession of the superior court." We treat this review proceeding as one in mandate and resolve it under our original jurisdiction. (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340–341; Cal. Const., art. VI, § 10.)

## II. DISCUSSION

The question is whether section 1054.9's provisions apply to evidence held by the court. The statute partially abrogated the general rule that a person seeking habeas corpus relief from a judgment of death is not entitled to postconviction discovery until a court issues an order to show cause. (*People v. Superior Court* (*Morales*) (2017) 2 Cal.5th 523, 528 (*Morales*); see generally *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1255–1261.) It authorizes discovery of materials, including physical evidence, to facilitate the prosecution of a habeas petition or motion to vacate the judgment. (*Morales*, at p. 528.)[2] It vests

---

[2]     The statute in effect at the time Satele filed his motion applied only to persons sentenced to death or life imprisonment without the possibility of parole. (§ 1054.9, former subd. (a), added by Stats. 2002, ch. 1105, § 1.) Effective January 1, 2019, section 1054.9 was amended to apply to cases involving a serious felony or a violent felony resulting in a sentence of 15 years or more. (§ 1054.9, subd. (a), as amended by Stats. 2018, ch. 482,

jurisdiction in the trial court to grant discovery and order the preservation of evidence within the statute's scope. (*Morales*, at pp. 531, 533.)

Under section 1054.9, subdivision (a) (section 1054.9(a)), upon a showing of good faith but unsuccessful efforts to obtain discovery materials from trial counsel, the court shall order that the defendant "be provided reasonable access to any of the materials described in subdivision (c)." In essence, "[i]f that showing is made, the defendant is entitled to discovery." (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 305.) Subdivision (c) defines " 'discovery materials' " as "materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." (§ 1054.9, subd. (c) (section 1054.9(c)).) Reading these provisions together, we have explained that the discovery contemplated under section 1054.9(a) applies only to those materials "currently *in the possession of the prosecution or law enforcement authorities* involved in the investigation or prosecution of the case." (*Morales*, *supra*, 2 Cal.5th at p. 534, italics added; accord, *In re Steele* (2004) 32 Cal.4th 682, 695, 697.)

A defendant's right to access such discovery materials is expressly qualified, however, by subdivision (d), which states: "In response to a writ or motion satisfying the conditions in subdivision (a), the court may order that the defendant be

_____

§ 2.) The statute's expansion applies prospectively only. (§ 1054.9, subd. (j).) The amendment also redesignated former subdivision (b) as subdivision (c), and former subdivision (c) as subdivision (d), without substantive change. We will refer to the subdivisions by their current designations.

provided access to physical evidence for the purpose of examination, including, but not limited to, any physical evidence relating to the investigation, arrest, and prosecution of the defendant only *upon a showing that there is good cause* to believe that access to physical evidence is reasonably necessary to the defendant's efforts to obtain relief." (§ 1054.9, subd. (d), italics added (§ 1054.9(d)); see *id.*, subd. (a) [containing the qualifier, "except as provided in subdivision (b) or (d)"].)[3] We have not yet interpreted whether the good cause requirement applies only to evidence possessed by prosecution and law enforcement authorities, or whether it also applies to physical evidence held by a court clerk. We now conclude it does not.

"It is well settled that the proper goal of statutory construction 'is to ascertain and effectuate legislative intent, giving the words of the statute their usual and ordinary meaning. When the statutory language is clear, we need go no further.' " (*People v. Ramirez* (2009) 45 Cal.4th 980, 987.) We consider the language in the context of the entire statute and the statutory scheme of which it is a part (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32), harmonizing provisions relating to the same subject matter, to the extent possible (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 248).

The statutory language provides strong indicators that the reference to "physical evidence" in section 1054.9(d) means evidence "in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." (§ 1054.9(c).)

---

[3] Section 1054.9(d) clarifies that its provisions do not cover access for postconviction DNA testing. Those procedures are found in section 1405.

Subdivision (d) authorizes an order for access to physical evidence "[i]n response to a writ or motion satisfying the conditions in subdivision (a)." As relevant here, those conditions are: "the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment"; a case in which a sentence of death has been imposed; and "a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful." (§ 1054.9, subds. (a), (b).) Thus, the conditions in subdivision (a) explicitly incorporate the definition of " 'discovery materials' " in subdivision (c). This reading accords with subdivision (c)'s statement that " 'discovery materials' " are defined "[f]or the purposes of this *section*" (italics added), rather than more narrowly for the purposes of subdivision (a). As noted, that definition applies to "materials in the possession of the prosecution and law enforcement authorities . . . ." (§ 1054.9(c).)

"It is elementary that, absent indications to the contrary, 'a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law . . . .' " (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 926.) The word "discovery" is used consistently throughout section 1054.9. As noted, subdivision (a) refers to good faith efforts to obtain "discovery materials," and subdivision (c) offers a definition of that term. Newly enacted subdivision (b) makes clear that the trial court has discretion to entertain successive requests for "discovery." Newly enacted subdivision (f) provides that "[t]his section does not require the retention of any discovery materials not otherwise required by law or court order." Section 1054.9's drafting is also consistent with related provisions of the code that "limit trial discovery to materials the

prosecutor possesses or knows 'to be in the possession of the investigating agencies . . . .' " (*In re Steele*, *supra*, 32 Cal.4th at p. 696, quoting § 1054.1, italics omitted.) These statutory provisions "are the only means for the defendant to compel discovery" from prosecutors, investigating law enforcement agencies, or others " 'employed to assist them in performing their duties.' " (*In re Steele*, at p. 696.)

Discovery is generally understood to mean an exchange of information among the parties to an action. (See § 1054, subd. (c); Cal. Const., art. I, § 30, subd. (c); cf. Code Civ. Proc., § 2017.010.) The trial court and its clerk are not parties to the criminal action. We have found no published decision applying the discovery provisions of section 1054.9 to materials held by the court. On the contrary, all have addressed requests for materials possessed by the prosecution or law enforcement authorities. (See, e.g., *In re Steele*, *supra*, 32 Cal.4th at p. 689; *Davis v. Superior Court* (2016) 1 Cal.App.5th 881, 884–885; *Hurd v. Superior Court* (2006) 144 Cal.App.4th 1100, 1107– 1108.) Moreover, although the issue was not squarely presented, we emphasized in *Morales* that the provisions of section 1054.9 "[do] not extend to *judicial* or other non-law-enforcement agencies, such as jury commissioners or indigent defense programs." (*Morales*, *supra*, 2 Cal.5th at p. 534, italics added.)

In short, section 1054.9 requires a defendant to show good cause to access "discovery materials" (§ 1054.9(a)), i.e., "materials in the possession of the prosecution and law enforcement authorities . . ." (§ 1054.9(c)). Based on the statute's plain language, the good cause requirement does not apply to evidence possessed by the court clerk.

A question remains: If section 1054.9 does not govern here, what standards control access to physical evidence retained by the court as a trial exhibit? Section 1417 provides that "[a]ll exhibits which have been introduced or filed in any criminal action or proceeding shall be retained by the clerk of the court who shall establish a procedure to account for the exhibits properly . . . until final determination of the action or proceedings . . . ."[4] In capital cases, the final determination of the action is "30 days after the date of execution of sentence" or "one year after the date of the defendant's death" if the defendant dies while awaiting execution. (§ 1417.1, subds. (d)(1), (2).)

Both this court and the United States Supreme Court have recognized a "general right" under the common law "to inspect and copy public records and documents, including judicial records and documents." (*Nixon v. Warner Communications, Inc.* (1978) 435 U.S. 589, 597, fn. omitted; accord, *Sander v. State Bar of California* (2013) 58 Cal.4th 300, 313–314, 322–323; *Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 483.) "The right of access 'serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally.' " (*KNSD Channels 7/39 v. Superior Court* (1998) 63 Cal.App.4th 1200, 1203; see *Sander*, at p. 318.) To this end, rule 2.550(c) of the California Rules of Court provides that "[u]nless confidentiality is required by law, court records are presumed to be open." The rule defines " 'record' " to include "all or a portion

---

[4] Sections 1417.2 and 1417.3 set forth some exceptions to this general rule not applicable here.

of any document, paper, exhibit, transcript, or other thing filed or lodged with the court . . . ." (*Id.*, rule 2.550(b)(1).)[5] The definition encompasses trial exhibits.

The court's jurisdiction to entertain a request for access to court exhibits derives from its inherent supervisory power over its own records and files. (*Nixon v. Warner Communications, Inc., supra*, 435 U.S. at p. 598; cf. *People v. Johnson* (1992) 3 Cal.4th 1183, 1258.) Specifically, the California Rules of Court authorize the court to permit an exhibit's release for examination outside of a court facility. (Cal. Rules of Court, rule 2.400(c).) In fashioning such an order, the court retains inherent authority to consider such factors as the need for testing, the administrative burden attendant to testing, any conditions necessary to maintain the integrity of the exhibit and chain of custody, as well as other equitable factors.

Here, the court denied access to the ballistics evidence based solely on Satele's failure to establish "good cause to believe that access to physical evidence is reasonably necessary to the defendant's effort to obtain relief." (§ 1054.9(d).) The court erred because section 1054.9(d) does not apply to a request for access to court exhibits. While the court has inherent authority to fashion an order respecting such access, its strict application of a good cause requirement is inconsistent with the presumption that such documents are open for inspection. (See *KNSD Channels 7/39 v. Superior Court, supra*, 63 Cal.App.4th at pp. 1203–1204.) Accordingly, we vacate the order and

---

[5] The California Public Records Act does not apply to records of the court. (See Gov. Code, § 6252, subds. (a), (f)(1).)

remand for the trial court to exercise its inherent authority to grant access under whatever conditions it deems necessary.

## III. DISPOSITION

The petition for writ of mandate is granted. Let a writ of mandate issue directing that the trial court vacate its order denying access to exhibits and conduct further proceedings consistent with this opinion.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Satele v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S248492
**Date Filed:** July 18, 2019

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Laura L. Laesecke

_____

**Counsel:**

Sanger Swysen & Dunkle, Robert M. Sanger and Stephen K. Dunkle for Petitioner.

No appearance for Respondent.

Jackie Lacey, District Attorney, Phyllis C. Asayama and Scott D. Collins, Deputy District Attorneys, for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert M. Sanger
Sanger Swysen & Dunkle
125 East De La Guerra Street, Suite 102
Santa Barbara, CA  93101
(805) 962-4887

Scott D. Collins
Deputy District Attorney
320 West Temple Street, Suite 540
Los Angeles, CA  90012
(213) 974-5911