Filed 9/16/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BIRD ROCK HOME MORTGAGE, LLC, | D084138 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00025674-CU-OR-NC) |
| BREAKING GROUND, LP, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist and Earl H. Maas III, Judges.  Affirmed.

Law Office of Michael G. Olinik and Michael G. Olinik for Plaintiff and Appellant.

Owens & Ross, Dustin E. Owens; Law Office of Mark J. Romeo and Mark J. Romeo for Defendants and Respondents Breaking Ground, LP and Microcredit Loan Fund, Inc.

Delphi Law Group, LLP, Zachary R. Smith and Kyle Larkin for Defendant and Respondent Delphi Law Group, LLP.

Bird Rock Home Mortgage, LLC (Bird Rock) appeals the judgment in an action concerning the nonjudicial foreclosure sale of a property after the

owners defaulted in payment of homeowners association (HOA) assessments. Bird Rock was the highest bidder at the sale, but Breaking Ground, LP (Breaking Ground) made a higher bid during the extended period of bidding prescribed by Civil Code section 2924m and obtained title to the property. Bird Rock argues the statutory extension period does not apply to nonjudicial foreclosure sales to enforce liens for unpaid HOA assessments. We conclude the period applied to the lien at issue in this case and affirm the judgment of the trial court, which reached the same conclusion.

I.

BACKGROUND

A.    *Foreclosure Sale*

The Oceanside Community Association (the Association) is an HOA that manages a common interest development of single family residential units (the Development). The Association's declaration of covenants, conditions, and restrictions (the Declaration) contains the following provisions:

"**4.1  Creation of the Lien and Personal Obligation of Assessments**
"Each Owner of a Lot by acceptance of a deed, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (a) Annual Assessments or charges, (b) Special Assessments for purposes permitted herein, and (c) Individual Assessments; such Assessments are to be established and collected as hereinafter provided. The Annual Assessments and Special Assessments, together with interest, costs and reasonable attorney's fees, shall be a charge on the Lot and shall be a continuing lien upon the Lot against which each such Assessment is made, the lien to become effective upon recordation of a notice of delinquent assessment. Each such Assessment, together with interest, costs, and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such Lot at the time when the Assessment became due and shall bind his or her devisees, personal representatives, heirs, successors and assigns. No Member may exempt himself or herself from liability for this contribution towards the common expenses by waiver of the use or enjoyment of any of the Common Areas or by the abandonment of his or her Lot."

2

**"4.11.1 Assessment Lien**
"If any Annual Assessment or Special Assessment is delinquent, the Association may pursue collection action by any method permitted by law, including, but not limited to, recordation of an Assessment lien against the Lot, all pursuant to Civil Code Sections 5650 through 5690."

**"4.11.5 Foreclosure of Lien**
"The lien may be enforced in any manner permitted by law, including sale by the court, sale by the trustee designated in the notice of delinquent Assessment, or sale by a trustee substituted pursuant to Civil Code Section 2934(a). Any sale shall be conducted in accordance with the provisions of Civil Code Sections 2924, 2924(b), 2924(c), 2924(f), 2924(g) and 2924(h), or any successor statutes thereto, applicable to the exercise of powers of sale in mortgages and deeds of trust, or in any other manner permitted by law. . . . "

After owners of a certain lot in the Development (the Property) defaulted on their payment of HOA assessments, Delphi Law Group, LLP (Delphi), acting as trustee, attorney, and authorized agent for the Association, recorded a notice of delinquent assessment/lien against the Property. Delphi later recorded a notice of default and election to sell and a notice of trustee's sale, and ultimately conducted a nonjudicial foreclosure sale of the Property on April 26, 2022. The unpaid HOA assessments and estimated sale costs totaled $37,763.21. Bird Rock made the highest bid at $60,000 and gave Delphi a check for that amount. Delphi did not give Bird Rock a trustee's deed upon sale and kept the bidding open pursuant to Civil Code section 2924m.[1] During the extended bidding period, Breaking Ground

---

[1] Where, as here, the property contains one to four residential units and the highest bidder at the sale is not a natural person who intends to occupy the property as a primary residence, the statute delays the finality of "[a] trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property" for up to 45 days after the sale to allow specified entities to submit bids equal to or greater than the highest bid at the sale. (Civ. Code, § 2924m, subds. (a)(1), (c).) Subsequent undesignated section references are to the Civil Code.

3

submitted the highest bid at $203,000.[2] Delphi gave Breaking ground a trustee's deed upon sale for the Property on June 23, 2022. Delphi returned the $60,000 check to Bird Rock, which refused to accept it.

B.    *Litigation*

Bird Rock sued Breaking Ground, Microcredit, and Delphi for declaratory and other relief. Bird Rock alleged it was entitled to the Property after it made the highest bid at the trustee's nonjudicial foreclosure sale and immediately paid Delphi, but Delphi illegally extended the bidding period after the sale based on the erroneous view the extended period prescribed by section 2924m applied to trustees' sales to enforce liens for unpaid HOA assessments. Bird Rock prayed for a judgment declaring the statute does not apply to trustees' sales to enforce such liens, cancelling the trustee's deed upon sale given to Breaking Ground, setting aside the sale to Breaking Ground, and quieting title to the Property in Bird Rock.

Delphi filed a cross-complaint in interpleader against Bird Rock, Breaking Ground, Microcredit, the Association, and the owners of the Property who defaulted in payment of HOA assessments. Delphi prayed for a

---

[2]    Breaking Ground submitted a declaration that it qualified as an "eligible bidder" because its managing general partner, Microcredit Loan Fund, Inc. (Microcredit) was "an eligible nonprofit corporation based in California whose primary activity is the development and preservation of affordable housing." (Former § 2924m, subd. (a)(3)(E), as amended by Stats. 2021, ch. 255, § 2, operative Jan. 1, 2022 through Dec. 31, 2022.) In its opening brief, Bird Rock agreed that Breaking Ground was an eligible bidder under the version of section 2924m in effect at the time of the sale. In its reply brief, however, Bird Rock states it "does not believe Breaking Ground was an eligible bidder" but "chose to abandon that portion of the case." We deem the point forfeited and do not consider it further. (See, e.g., *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 453 [new point raised in reply brief will not be considered absent good reason].)

4

judgment declaring the rights and duties of the parties with respect to the Property and the proceeds of the trustee's sale.

The case proceeded to a bench trial based on the pleadings, stipulated facts, exhibits, and briefs. The dispositive issue was whether the extended bidding period authorized by section 2924m applied to the trustee's nonjudicial foreclosure sale of the Property. Bird Rock argued the statute did not apply because the sale was not "under a power of sale contained in a deed of trust or mortgage" (*id.*, subd. (c)), and so the sale to Breaking Ground, which occurred after the sale to Bird Rock was final, was illegal. Delphi and Breaking Ground argued section 2924m applied to the trustee's sale of the Property, because a lien for nonpayment of HOA assessments qualified as a mortgage for purposes of the nonjudicial foreclosure statutory scheme, and so the sale to Breaking Ground as the highest bidder during the extended bidding period was proper. The trial court agreed with Breaking Ground and Delphi. The court entered a judgment that declared section 2924m applied to the trustee's sale of the Property and the sale and deed to Breaking Ground were valid; denied Bird Rock relief on its claims for cancellation of instrument, set-aside of the trustee's sale, and quiet title; and directed distribution of the sale proceeds.

II.

DISCUSSION

Bird Rock attacks the judgment on multiple grounds. It faults the trial court for failing to consider the problems the Legislature sought to address by enacting section 2924m, for failing to apply the rules of statutory interpretation, for failing to consider the consequences of its interpretation, and for misapplying case law. Bird Rock goes on to argue the only interpretation that comports with the plain language of section 2924m, the

5

statutory scheme regulating enforcement of liens for unpaid HOA assessments, and the legislative history of section 2924m is that the statute does not apply to nonjudicial foreclosure sales to enforce such liens. Under Bird Rock's interpretation of section 2924m, Delphi had no authority to accept bids after Bird Rock made the highest bid at the nonjudicial foreclosure sale, the subsequent sale to Breaking Ground is void, and Bird Rock is entitled to judgment on each of the counts alleged in its operative complaint. Bird Rock asks us to reverse the judgment and to remand the matter to the trial court with instructions to enter a judgment in its favor.

A.    *Standard of Review*

We review de novo the interpretation and application of a statute to a set of stipulated facts. (*Alaama v. Presbyterian Intercommunity Hospital, Inc.* (2019) 40 Cal.App.5th 55, 65; *Estate of Kampen* (2011) 201 Cal.App.4th 971, 985.) We examine the language of the statute in light of the entire statutory scheme and adopt an interpretation that is consistent with the usual and ordinary meaning of the language and the apparent legislative intent. (*Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 55; *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1074.)

B.    *Overview of Section 2924m*

Section 2924m was added to the statutory scheme governing nonjudicial foreclosure sales effective January 1, 2021. (Stats. 2020, ch. 202, § 7.) The statute "prescribe[s] an alternative process" for "a trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property" that contains one to four residential units. (Legis. Counsel's Dig., Sen. Bill No. 1079, Stats. 2020 (2019–2020 Reg. Sess.), ch. 202.) Where, as here, a prospective owner occupant, as defined in section 2924m, is not the

6

last and highest bidder at the trustee's sale, the statute grants other entities, as defined in the statute, "certain rights and priorities to make bids on the property after the initial trustee sale and potentially to purchase it as the last and highest bidder, subject to certain requirements and timelines." (*Ibid.*)  Section 2924m was enacted during the COVID-19 pandemic, which "resulted in widespread job loss and financial distress" that "raised the prospect that many California homeowners [would] soon default on their mortgage payments (if they have not done so already) and a wave of home foreclosures could follow."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1079 (2019-2020 Reg. Sess.) as amended Aug. 24, 2020.)  "[D]raw[ing] upon lessons learned from what happened in California's last foreclosure crisis," the Legislature enacted "provisions intended to mitigate against blight, vacancy, and the transfer of residential property ownership from owner-occupants to landlord investors in the event that California experience[d] [another] wave of foreclosures."  (*Ibid.*)

The way section 2924m works is to delay the finality of a trustee's nonjudicial foreclosure sale to allow specified entities to submit bids equal to or greater than the highest bid made at the sale.  A trustee's sale generally is deemed final when the auctioneer accepts the last and highest bid.  (§ 2924h, subd. (c); *Matson v. S.B.S. Trust Deed Network* (2020) 46 Cal.App.5th 33, 40.)  If the sale is "under a power of sale contained in a deed of trust or mortgage on real property containing one to four residential units," however, the sale will be deemed final at the end of the auction only if the last and highest bidder is "a prospective owner-occupant" (§ 2924m, subd. (c)(1)), i.e., a natural person who intends to occupy the property as a primary residence and meets other requirements (*id.*, subd. (a)(1)).  If the last and highest bid at the trustee's sale is not made by a prospective owner-occupant, certain

7

entities may submit bids matching or exceeding the last and highest bid at the sale.  In that event, the trustee's sale is not deemed final until the earliest of the following:  (1) 15 days after the sale, if no "eligible tenant buyer" or "eligible bidder," as defined in the statute, submits a bid or notice of intent to bid within 15 days of the sale (*id.*, subd. (c)(2)); (2) the date when a representative of all eligible tenant buyers submits a bid equal to the last and highest bid at the sale, provided the bid is submitted within 15 days of the sale or a notice of intent to bid is submitted within that time and the bid is submitted within 45 days of the sale (*id.*, subd. (c)(3)); or (3) 45 days after the sale, during which period an eligible bidder may submit a bid that exceeds the last and highest bid at the sale (*id.*, subd. (c)(4)).

C.    *Applicability of Section 2924m to Trustee's Sale of the Property*

We now turn to the dispositive question:  Did section 2924m apply to the trustee's nonjudicial foreclosure sale of the Property to enforce the Association's lien for unpaid HOA assessments?  To answer that question, we must consider the language of section 2924m, the nonjudicial foreclosure statutory scheme as a whole, provisions of the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act; § 4000 et seq.) concerning liens for delinquent HOA assessments, and provisions of the Declaration concerning such liens.

Section 2924m applies to "[a] trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property containing one to four residential units pursuant to Section 2924g."  (§ 2924m, subd. (c).)  Bird Rock does not dispute the Property contains a single residential unit or the sale was conducted pursuant to section 2924g.  It disputes the trial court's conclusion the sale was conducted "under a power of sale *contained in a . . . mortgage.*"  (§ 2924m, subd. (c), italics added.)  Bird Rock contends a

8

lien for unpaid HOA assessments does not qualify as a mortgage for purposes of section 2924m, because the lien is created not by contract but by the Davis-Stirling Act, which Bird Rock argues has its own procedures for enforcing the lien by a trustee's sale that do not include section 2924m.  We disagree.

The statutory scheme governing nonjudicial foreclosure sales has its own definitions of "mortgage."  Section 2920, subdivision (a) defines "mortgage" as "a contract by which specific property, including an estate for years in real property, is hypothecated for the performance of an act, without the necessity of a change of possession."  Section 2920, subdivision (b) states: "For purposes of Sections 2924 to 2924h, inclusive, 'mortgage' also means any security device or instrument, other than a deed of trust, that confers a power of sale affecting real property or an estate for years therein, to be exercised after breach of the obligation so secured . . . ."  (See fn. 4, *post* [explaining that §§ 2924, 2924f & 2924h incorporate § 2924m].)  Section 2924, subdivision (a) states:  "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge."  These definitions are consistent with our Supreme Court's statement that " '[i]t is the general rule that where the purpose and effect of the transaction is to create a lien on specific property as security for the payment of a debt it constitutes a mortgage, irrespective of the language used by the parties.' " (*Teater v. Good Hope Dev. Corp.* (1939) 14 Cal.2d 196, 209 (*Teater*); see *Laubisch v. Roberdo* (1954) 43 Cal.2d 702, 709 [a mechanic's lien "is in the nature of a mortgage" and "the same procedural and substantive principles [for foreclosure] are generally appropriate in both cases"].)

The lien on the Property qualifies as a "mortgage" under the above-cited authorities. Under paragraph 4.1 of the Declaration, by accepting a deed for a lot in the Development an owner "is deemed to covenant and agree to pay" assessments, and the assessments "shall be a continuing lien on the [l]ot" that "become[s] effective upon recordation of a notice of delinquent assessment." Paragraph 4.11.5 provides the lien "may be enforced in any manner permitted by law, including . . . sale by the trustee designated in the notice," and the sale "shall be conducted in accordance with the provisions of Civil Code Sections 2924, 2924(b), 2924(c), 2924(f), 2924(g) and 2924(h), or any successor statutes thereto, applicable to the exercise of powers of sale in mortgages and deeds of trust."[3] "The Declaration . . . is a contract governing the relationship between the Association and unit owners." (*Harbours Condominium Ass'n, Inc. v. Hudson* (Ind.Ct.App. 2006) 852 N.E.2d 985, 991; see *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 512 [holding declaration of covenants, conditions, and restrictions was contract between unit owner and HOA].) That contract authorized the Association to record a notice of delinquent assessment " 'the purpose and effect of [which was] to create a lien on specific property as security for the payment of a debt' " (*Teater, supra*, 14 Cal.2d at p. 209), and gave the Association a power of sale to enforce the lien. The lien thus falls within the definitions of "mortgage" in the nonjudicial foreclosure statutory scheme. (§§ 2920, 2924, subd. (a).)

Bird Rock insists, however, that the lien for unpaid HOA assessments authorized by the Declaration "is not a contract at all." Rather, says Bird Rock, the lien is a "special statutory creation" under the Davis-Stirling Act

---

3    The Declaration erroneously cites sections 2924b, 2924c, 2924f, 2925g, and 2924h by including the letters within parentheses.

10

and is enforceable by a trustee's nonjudicial foreclosure sale only because the Act makes it so. To conclude a lien for unpaid HOA assessments qualifies as a mortgage within the meaning of the nonjudicial foreclosure statutes, Bird Rock continues, would make the lien enforceable under those statutes and thereby would render "superfluous" the provisions of the Act authorizing creation and foreclosure of such liens and would "completely reshape the rights and responsibilities of HOAs, which are already defined in detail under the [Act]." We are not persuaded.

The Davis-Stirling Act, which applies to the Development (§ 4200), makes a recorded notice of delinquent assessment a lien on an owner's separate interest (§ 5675, subd. (a)) and makes the lien enforceable by nonjudicial foreclosure sale (§§ 5700, subd. (a), 5710, subd. (a)). But the Act is not the only thing that governs the Development. " 'Governing documents,' " including the Declaration, also do. (§ 4150; *Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 127.) In addition to the legal description of the development, the name of its managing association, and the restrictions on the use or enjoyment of any portion of the development that are intended to be enforceable equitable servitudes (§ 4250, subd. (a)), the declaration "may contain any other matters the declarant or the members consider appropriate" (*id.*, subd. (b)). Here, the Declaration contains detailed provisions regarding assessments, which, among other things, make assessments a continuing lien on the assessed property that becomes effective upon recordation of a notice of delinquent assessment and authorize the Association to enforce the lien by a trustee's sale conducted pursuant to the nonjudicial foreclosure statutes. As we explained earlier, the Declaration is a contract that makes a lien for delinquent assessments a "mortgage" for purposes of the nonjudicial

11

foreclosure statutory scheme. The Declaration does not render the lien provisions of the Act "superfluous," as Bird Rock contends; rather, it provides an additional, contractual basis for creation and enforcement of a lien. Nor does the Declaration "completely reshape the rights and responsibilities of HOAs" under the Act. Bird Rock identifies no right or responsibility that is altered by the Declaration's treatment of a lien for unpaid assessments as a mortgage. Its lien provisions are similar to those of the Act, and if there is any inconsistency, the Act prevails. (§ 4205, subd. (a); *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1102.) Similarly, the Act prevails in the event of any conflict with the nonjudicial foreclosure statutes. (*Huntington Continental Townhouse Assn., Inc. v. Miner* (2014) 230 Cal.App.4th 590, 606.)

Bird Rock next employs what it calls "statutory interpretation analysis" to offer several grounds why in its view section 2924m does not apply to nonjudicial foreclosure sales to enforce liens for unpaid HOA assessments. As we shall explain, none is persuasive.

Bird Rock relies on the "plain language" of section 2924m to argue the statute is limited to nonjudicial foreclosure sales "under a power of sale contained in a deed of trust or mortgage" (*id.*, subd. (c)), and to extend the statute to sales to enforce liens for unpaid HOA assessments would violate rules of statutory interpretation by making the quoted language " 'surplusage' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357). Several other provisions of the nonjudicial foreclosure statutory scheme also contain the quoted language (e.g., §§ 2924f, subd. (b)(1), 2924g, subd. (a)(1), 2924h, subd. (a)), and Bird Rock concedes they apply to trustees' sales to enforce liens for unpaid HOA assessments. It offers no explanation why the quoted language should be given a narrower interpretation in section 2924m so that it would

12

cover only a power of sale in a mortgage or deed of trust that secures repayment of a loan used to buy the property that constitutes the security. " '[A]bsent indications to the contrary, "a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law." ' " (*Satele v. Superior Court* (2019) 7 Cal.5th 852, 859.) Under the definitions of "mortgage" contained in the nonjudicial foreclosure statutory scheme (§§ 2920, 2924, subd. (a)), the power of sale at issue in this case qualifies as "a power of sale contained in a deed of trust or mortgage" (§ 2924m, subd. (c)). (See pp. 9–10, *ante.*)

Next, Bird Rock contends consideration of the nonjudicial foreclosure statutory scheme together with the provisions of the Davis-Stirling Act on enforcement of liens for unpaid HOA assessments supports the conclusion that trustees' sales to enforce such liens "were never meant to be viewed as the equivalent [of] sales under a deed of trust or mortgage." A provision of the Act strongly suggests otherwise, however, by providing that "[a]ny sale by the trustee shall be conducted in accordance with Section 2924, 2924b, and 2924c applicable to the exercise of powers of sale in mortgages and deeds of trust." (§ 5710, subd. (a).) Bird Rock points out the provision does not mention section 2924m, but that does not advance its position. Section 5710 also does not mention section 2924h, which Bird Rock insists made the trustee's sale of the Property final when it made the last and highest bid. Nevertheless, sections 2924h and 2924m both applied to the sale, because they are incorporated by reference through section 2924,[4] which section 5710

---

[4] Section 2924, which concerns the exercise of a power of sale, incorporates section 2924f, which concerns the notice of sale. (§ 2924, subd. (a)(3)–(5).) A provision of the Davis-Stirling Act that gives an owner a right of redemption after a trustee's sale also incorporates section 2924f.

13

mentions, and because the Declaration required the sale to be conducted in accordance with "sections 2924, 2924(b), 2924(c), 2924(f), 2924(g) and *2924(h), or any successor statutes thereto*."  (Italics added; see fn. 3, *ante*.)

Bird Rock contends the trustee should not have applied section 2924m to the sale of the Property, because section 2924h makes a trustee's sale final "upon the acceptance of the last and highest bid" (*id.*, subd. (c)) "[e]xcept as specifically provided in Section 2924m" (§ 2924h, subd. (f)).  In a variation of its plain language argument, Bird Rock argues the only sales within the exception are those "under a power of sale contained in a deed of trust or mortgage" (§ 2924m, subd. (c)), and to except a sale to enforce a lien for unpaid HOA assessments would violate the rule that " ' "if exemptions are specified in a statute, [courts] may not imply additional exemptions unless there is a clear legislative intent to the contrary" ' " (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 389).  Since, as we have explained, a lien for unpaid HOA assessments authorized by the Declaration qualifies as a "mortgage" for purposes of the nonjudicial foreclosure statutes (see pp. 9–10, *ante*), applying section 2924m to the trustee's sale to enforce the lien does not add an exemption to the statute.

Bird Rock also argues section 2924m should not be interpreted to apply to trustees' sales to enforce liens for unpaid HOA assessments because such an interpretation would "interfere" or "conflict" with the Davis-Stirling Act by making uncertain the date that starts the period an owner has to exercise the right of redemption granted by the Act, a right Bird Rock says must prevail over section 2924m.  By giving an owner of a property sold to collect unpaid

---

(§ 5715, subd. (b).)  Section 2924f, in turn, references both section 2924h, which concerns bidding at a sale, and section 2924m, which postpones the finality of a sale of a property containing one to four residential units under specified conditions.  (§ 2924f, subds. (a), (b)(1), (7), (8).)  Section 2924h incorporates section 2924m.  (§ 2924h, subds. (c), (f).)

HOA assessments a right to redeem the property for 90 days after the sale, the Act creates an exception to the general rule that there is no right of redemption in nonjudicial foreclosure proceedings. (§ 5715; *Barry v. OC Residential Properties, LLC* (2011) 194 Cal.App.4th 861, 866.) Section 2924m delays for up to 45 days the date on which the trustee's sale is deemed final and the 90-day redemption period begins to run if a bidder specified in the statute submits a bid that meets the conditions of the statute. (*Id.*, subd. (c).) Although the date the sale is deemed final varies dependent on whether the bidder is a "prospective owner-occupant," "eligible tenant buyer," or "eligible bidder" as defined in section 2924m, that level of uncertainty creates no conflict or interference with section 5715 that would justify disregarding section 2924m. Rather, we should construe the statutes, as we do, in a way that allows both to operate. (Code Civ. Proc., § 1858; *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 219; *Strother v. California Coastal Com.* (2009) 173 Cal.App.4th 873, 880.)

As the final point in its statutory interpretation analysis, Bird Rock argues nonjudicial foreclosure sales to enforce liens for unpaid HOA assessments are not subject to section 2924m because the legislative history is silent as to such liens. The portions of legislative history the parties included in the record do not mention liens for unpaid HOA assessments, but we cannot conclude from this silence that the Legislature did not intend section 2924m to apply to sales to enforce such liens when they qualify as mortgages within the meaning of the statute, as did the lien enforced in this case. (See *People v. Montiel* (2019) 35 Cal.App.5th 312, 323–324 [legislative history's silence on matter does not negate plain text of statute that covers matter]; *Hayes v. Temecula Valley Unified School Dist.* (2018) 21 Cal.App.5th 735, 753 [words of statute control over silence in legislative history].) The

15

Legislature was concerned that widespread job loss and financial distress during the COVID-19 pandemic would cause homeowners to default on their mortgage payments and would trigger a wave of foreclosures, and it enacted section 2924m to mitigate the anticipated blight, vacancy, and other adverse consequences. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1079 (2019-2020 Reg. Sess.) as amended Aug. 24, 2020.) Widespread default in payment of HOA assessments could lead to the same consequences the statute was intended to mitigate. Although the Legislature might not have considered such defaults, interpreting section 2924m to apply to nonjudicial foreclosure sales based on such defaults furthers the legislative intent. Since that interpretation comports with the statutory language and purpose, we adopt it. (*Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1385; *Anderson Union High Sch. Dist. v. Schreder* (1976) 56 Cal.App.3d 453, 460.)

In summary, we conclude section 2924m applied to the trustee's sale of the Property. The trial court correctly entered a judgment so declaring; denying Bird Rock relief on its claims to cancel the trustee's deed upon sale given to Breaking Ground, to set aside the trustee's sale, and to quiet title to the Property in Bird Rock; and directing disbursement of the funds Delphi was holding. Our conclusion makes it unnecessary for us to consider Bird Rock's contentions it is entitled to a judgment in its favor on each claim, because the contentions proceed from the erroneous premise that section 2924m did not apply to the sale. We also need not address the alternative grounds for affirmance urged by Delphi and Breaking Ground.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

16

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

RUBIN, J.